IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TESSERA, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 12-852-SLR |
| | ) |
| AMKOR TECHNOLOGY, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

At Wilmington this 10th day of December, 2014, having reviewed the papers submitted in connection with various pending motions,[1] I will deny Amkor's motion for the reasons that follow:

1. **Introduction.** Tessera, a corporation organized and existing under the laws of the State of Delaware, is a global leader in the development of semiconductor packaging technology. Amkor, also a corporation organized and existing under the laws of the State of Delaware, is in the semiconductor packaging business. In 1996, Tessera and Amkor entered into a license agreement ("the Agreement") whereby Amkor was granted a license to Tessera's integrated circuit packaging technology, including access to a portfolio of Tessera patents on key technology relevant to Amkor's semiconductor packaging business. (D.I. 26, ex. A) Among the patents licensed was

---

[1]Defendant Amkor Technology, Inc.'s ("Amkor") motion to vacate, modify, or correct an arbitration award, and plaintiff Tessera, Inc.'s ("Tessera") motion to strike Amkor's motion to vacate, modify, or correct an arbitration award.

U.S. Patent No. 6,046,076 ("the '076 patent"), entitled "Vacuum Dispense Method For Dispensing An Encapsulant And Machine Therefor." (D.I. 1, ex. A) The Agreement contained a "Governing Law" clause that provided the following: (1) it "shall be governed, interpreted and construed in accordance with the laws of the State of California;" (2) any disputes "which may arise from, under, out of or in connection with this Agreement . . . shall be finally settled by arbitration under the rules of Arbitration of the International Chamber of Commerce ["ICC"];" (3) "the location of the arbitration shall be in San Jose, California" for "any claim [ ] brought by Licensee or Tessera for nonpayment of royalties;" and (4) [j]udgment on the award rendered by the arbitrators shall be final." (D.I. 26, ex. A at 12) The Agreement was set to expire by its own terms on May 9, 2011. (*Id.* at 7)

2. **Procedural background.** In 2006, Tessera initiated an arbitration, alleging that Amkor owed royalties in excess of $115 million under the Agreement. The arbitration ended in early 2009 with the ICC awarding over $60 million to Tessera, which amount Amkor paid in full and as scheduled. (D.I. 26, ex. B ¶ 4) Tessera, however, continued to make allegations against both Amkor and its customers; consequently, Amkor requested a second arbitration in 2009 seeking a declaration that it was a licensee in good standing and that the Agreement remained in effect. Tessera counterclaimed by seeking to terminate the Agreement and by asserting that Amkor owed Tessera additional royalties in excess of $400 million. (*Id.*, ¶ 7)

3. The ICC issued Partial Award No. 3 on July 5, 2012, finding (*inter alia*) that: (1) Amkor had failed to pay royalties for products using technology described in seven

2

U.S. and foreign Tessera patents (including the '076 patent); (2) Amkor's breaches were material, deliberate and intentional; (3) because Amkor also breached the Agreement by continuing to make covered products without compensating Tessera, damages were awarded through the date of the award; and (4) given Amkor's deliberate and intentional breaches, Tessera was entitled to terminate the Agreement as of February 2011. (D.I. 26, ex. E) Amkor appealed the damages award to the Superior Court of the State of California, County of San Francisco ("Superior Court"), arguing that the ICC lacked the authority to award damages after February 2011, when Tessera sent its notice of termination letter. (D.I. 26, ex. H)

4. On July 6, 2012, Tessera initiated the litigation at bar, wherein Tessera claims that Amkor infringes the '076 patent based in part on Partial Award No. 3. In November 2013, the parties filed a stipulation to stay the litigation pending resolution of the arbitration proceedings. (D.I. 21) On April 9, 2013, Amkor petitioned the Patent Trial and Appeal Board for *inter partes* review of various claims of the '076 patent, including claims 1 and 6. As per the norm, the PTAB made a preliminary finding that the challenged claims of the '076 patent should be cancelled; the IPR trial hearing was scheduled for June 12, 2014, with a final decision due October 11, 2014. (D.I. 66, ex. 5)

5. On May 9, 2014, the ICC issued Partial Award No. 5, which calculated the damages based on the liability determinations in Partial Award No. 3. (D.I. 26, ex. F) On May 27, 2014, Amkor filed its motion to vacate, modify, or correct. (D.I. 24) Tessera filed its motion to strike (D.I. 33) on June 23, 2014. On July 14, 2014, Tessera filed a petition to confirm Partial Award No. 5 in the Superior Court. (D.I. 66, ex. 3)

3

Amkor presented a petition to vacate, modify, or correct the award in the same state court proceeding. (D.I. 26, ex. 4) In August 2014, Amkor attempted to remove the California state court proceedings to the United States District Court for the Northern District of California. Tessera responded with a motion to remand, which motion was granted by the federal court. (D.I. 60, ex. A) By order issued October 9, 2014, the Superior Court confirmed Partial Award No. 5 and judgment was entered in favor of Tessera, with damages in the amount of $112 million. (D.I. 66, exs. 1-2) Amkor appealed. On November 25, 2014, the Court of Appeal of the State of California, First Appellate District, affirmed the denial of Amkor's petition. (D.I. 68, ex. A) On October 10, 2014, the PTAB issued its decision, concluding that Amkor had not proven by a preponderance of the evidence that claims 1-8, 10-13, 18, and 19 of the '076 patent were unpatentable. (D.I. 66, ex. 5)

    6. **Choice of law.** The Agreement provides as follows:

> A. *Governing Law.* Arbitration. This Agreement shall be governed, interpreted and construed in accordance with the laws of the State of California as if without regard to its provisions with respect to conflicts of Laws. . . . If [the parties'] disputes, controversies, claims or differences cannot be settled between the parties, such disputes, controversies, claims or differences shall be finally settled by arbitration under the rules of Arbitration of the International Chamber of Commerce . . . .

(D.I. 26, ex. A at 12) Given that the arbitration provision is included within the choice of law provision, a reasonable interpretation of such language requires application of the California arbitration procedures, so long as such procedures do not conflict with the Federal Arbitration Act's ("FAA") policy of encouraging arbitration. *See, e.g., Mount Diablo Med. Ctr. v. Health Net of California, Inc.,* 101 Cal. App. 4th 711, 719-24 (2002).

4

7. **Discussion.** The crux of Amkor's motion to vacate, modify, or correct the arbitration award is that "patent license royalties are only payable for the term of the license." (D.I. 67 at 1) According to Amkor, "[i]n this case, the parties agreed to arbitrate patent license royalties, but **not** patent infringement after termination of their license." (*Id.*) Because the ICC awarded damages based on post-termination conduct, Amkor contends that this court, not the California state court, has jurisdiction over the parties' dispute pursuant to 28 U.S.C. § 1338, as reflected in this very lawsuit. Amkor argues that its motion does not ask the court to overturn the California judgment, but only to decide if the ICC exceeded its authority under the FAA under the circumstances at bar. (*Id.* at 2)

8. I decline to grant Amkor's motion, for two primary reasons. First, the Agreement's arbitration clause applies broadly to "any disputes, controversies, claims or differences which may arise from, under, out of or in connection with this Agreement." (D.I. 26, ex. A, at 12) California courts have held that such language requires "that the parties arbitrate extracontractual disputes apart from strict interpretation and contract performance questions." *EFund Capital Partners v. Pless*, 150 Cal. App. 4th 1311, 1329 (2007).[2] The ICC's award of damages after February 2011 was within its authority to award non-contract damages, especially when the breadth of the arbitrator's authority in this regard is compared to the exceedingly narrow

---

[2]The Third Circuit's law is the same. *See, e.g., Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 580-81 (3d Cir. 2005).

5

scope of review of an arbitrator's award under both California law and the FAA.³

9. The procedural history of this dispute also counsels against Amkor's position. Even if this court has jurisdiction to review the award of post-termination damages, I decline to exercise it in light of the state court proceedings. The merits of Amkor's arguments have now been rejected by the ICC, the California Superior Court, and the California Court of Appeal. Although Amkor argues that it is not asking this court to overturn the California judgment, the relief it is requesting⁴ has the same effect - a decision in its favor would undermine the validity of the California judgment and impede enforcement of such. Under the reasoning of *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976), in the face of duplicative lawsuits, federal courts have the power to abstain from hearing a case in the name of "'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817 (citation omitted). In determining whether to stay a federal case in favor of pending state court proceedings, the Supreme Court has identified several factors to examine:

> (1) whether either court has exercised jurisdiction over a res; (2) the relative convenience of the forum; (3) the order in which the forums

---

³Under California law, for instance, "[e]ven 'an error of law apparent on the face of the award that causes substantial injustice does not provide grounds for judicial review.'" *Alexander v. Blue Cross of California*, 88 Cal. App. 4th 1082, 1087 (2001) (citation omitted) Likewise, "[u]nder the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances' . . . . If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Oxford Health Plans LLC v. Sutter,* 133 S. Ct. 2064, 2068 (2013) (citations omitted).

⁴To determine whether the ICC exceeded its authority under the FAA when it awarded post-termination damages. (D.I. 67 at 2)

6

obtained jurisdiction; (4) the desirability of avoiding piecemeal litigation; (5) whether state or federal law controls the decision on the merits; (6) whether the state court proceeding is adequate to protect the rights of the parties; (7) and whether the federal action was the result of forum shopping.

*Hinman v. Fujitsu Software Corp.*, 2006 WL 358073, at *1 (N.D. Cal. Feb. 13, 2006) (citing to *Colorado River*, 424 U.S. at 818, as well as *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23- 26 and 34 n.20 (1983)).

10. When reviewing the above factors in light of the record, abstention is warranted. The dispute between the parties arises out of a business relationship memorialized in the Agreement. The Agreement is governed by California law, with a broad arbitration clause. As agreed to by the parties, the state courts of California have the jurisdiction to review the arbitral decision, and have entered final judgment consistent with the agreed upon process. Indeed, Amkor invoked the jurisdiction of the California courts until it was handed an adverse decision. Since then, Amkor has engaged in (charitably speaking) "reactive" litigation which has engaged the resources of multiple state and federal courts. Moreover, as noted by Tessera, "district courts routinely abstain under *Colorado River* where the state courts are already involved in the arbitration."[5] (D.I. 34 at 16-17)

11. Consistent with the view taken by the United States District Court for the

---

[5] *See, e.g., Myer v. Americo Life, Inc.*, 2005 WL 3007117 (W.D. Mo. Nov. 8, 2005); *Samuels Grp., Inc. v. Hatch Grading & Contracting, Inc.*, 697 F. Supp. 2d 1042 (N.D. Iowa 2010); *NitGen Co. v. SecuGen Corp.*, 2004 WL 2303020 (N.D. Cal. Oct. 12, 2004); *Atkinson v. Grindstone Capital, LLC*, 12 F. Supp. 3d 156, 166 (D.D.C. 2014); *Johnson & Johnson Vision Care, Inc. v. Kenneth Crosby N.Y., LLC*, 2010 WL 1030121 (M.D. Fla. Mar. 17, 2010); *Garber v. Sir Speedy, Inc.*, 1996 WL 734947 (N.D. Tex. Dec. 11, 1996).

Northern District of California in granting Tessera's motion to remand, "this court is not a state court of review, nor is it one in the business of deciding cases of pure state concern." Abstention is appropriate. Amkor's motion to vacate, modify, or correct is denied. Tessera's motion to strike is denied as moot. An order shall issue.

_____
United States District Judge